Filed 3/13/26  P. v. Soriano CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B340176 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23CJCF00857) |
| v. | |
| ANTHONY SORIANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield, Deputy Attorney General, for Plaintiff and Respondent.

_____

Anthony Soriano pleaded no contest to one count of assault with a semiautomatic firearm. The trial court suspended execution of a six-year prison sentence and placed Soriano on formal probation for two years with terms and conditions. Soriano obtained a certificate of probable cause and appealed from the judgment. He contends the trial court abused its discretion by denying his pre-plea motion for mental health diversion, pursuant to Penal Code[1] section 1001.36, based on a finding he posed an unreasonable risk of danger to public safety if treated in the community. We affirm.

## BACKGROUND

### A. Current Offense

A felony complaint, filed on December 19, 2023, alleged that 32-year-old Soriano committed assault with a semiautomatic firearm (§ 245, subd. (b)), discharge of a firearm with gross negligence (§ 246.3, subd. (a)), and possession of a firearm by a felon (§ 29800, subd. (a)(1)). At an arraignment held the same day, Soriano pleaded not guilty to the charges, and the court set bail at $245,000. He remained in custody and was eventually released on bail approximately one month before the hearing commenced on his motion for mental health diversion.[2]

We take our account of the circumstances of the charged offenses from the transcript of the preliminary hearing, as the parties did in their appellate briefing. According to the investigating officer's testimony (which was based on interviews

---

[1] Undesignated statutory references are to the Penal Code.

[2] The two-day hearing on the motion began on April 22, 2024, and concluded on May 24, 2024.

2

with the assault victim), at approximately 9:30 p.m. on December 15, 2023, Soriano approached a taco stand operated by Juan Bernal and his father. Soriano did not ask for anything. He only stared at Bernal in a manner that Bernal found to be "really weird." Bernal asked Soriano if he needed something and when Soriano did not respond, Bernal asked him to leave. Bernal described Soriano as appearing very intoxicated.

Soriano pulled a firearm out of his waistband. He "rack[ed] the gun," causing a live round to eject, and he pointed the gun at Bernal's chest. Bernal put his hand up because he was afraid of being shot. Soriano returned the gun to his waistband and punched Bernal on the chin. Bernal attempted to grab Soriano's arm to control him. At the same time, Bernal's father approached Soriano from behind, placed him in a headlock, wrestled him to the ground, and removed the gun from Soriano's waistband. Thereafter, Bernal's father pulled Soriano up and walked him away from the taco stand. After telling Soriano not to shoot the gun, Bernal's father returned the firearm to Soriano. As Soriano walked away, he fired two or three rounds into the air.

A security guard who was on duty near the crime scene testified at the preliminary hearing that he heard Soriano yelling loudly and angrily, and he observed him discharge three shots from a firearm, with the gun pointing at an upward angle. The guard called the police and reported that Soriano appeared to be very drunk. Soriano was arrested the same night, and he was transported to a hospital by ambulance due to a possible drug overdose.

At the conclusion of the preliminary hearing, the court held Soriano to answer on the charges alleged in the felony complaint.

3

The court denied Soriano's request for a conditional release or a reduction in bail, and bail remained set at $245,000.

On February 20, 2024, the district attorney filed an information charging Soriano with the same offenses alleged in the felony complaint: assault with a semiautomatic firearm, discharge of a firearm with gross negligence, and possession of a firearm by a felon. The information also alleged multiple factors in aggravation: that Soriano engaged in violent conduct that indicated a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)); that Soriano was armed with and used a weapon (rule 4.421(a)(2)); and that Soriano had served a prior prison term (rule 4.421(b)(3)). The information also alleged Soriano had a 2013 prior strike conviction for burglary within the meaning of the "Three Strikes" law. (§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d).)

## B.    Prior Adjudications and Convictions

As set forth in the probation report and noted in the parties' appellate briefing, Soriano's criminal history includes the following sustained petitions in juvenile delinquency proceedings: (1) a 2006 adjudication for vandalism (§ 594, subd. (a)), which Soriano committed when he was 14 years old; (2) a 2006 adjudication for false imprisonment (§ 236); (3) a 2006 adjudication for minor in possession of a firearm (§ 12101, subd. (a)(1));[3] and (4) a 2009 adjudication for knowingly causing or participating in a vehicular accident for the purpose of presenting

---

[3] Each of the three 2006 offenses occurred on a separate date.

4

a false or fraudulent claim (§ 500, subd. (a)(3)), which Soriano committed in 2008 when he was 16 years old.

Soriano's history of adult convictions consists of the following:  In 2010, when Soriano was 19 years old, he was arrested for burglary.  (§ 459.)  He was convicted of that offense in 2013 and sentenced to two years in prison.  In 2011, while his burglary case was pending, he was convicted of using a controlled substance (Health & Saf. Code, § 11550, subd. (a)), phencyclidine (PCP), and sentenced to 90 days in jail.  In 2014, he was convicted of driving without a license and fined.  (Veh. Code, § 12500, subd. (a).)  In 2015, he was charged with inflicting corporal injury during a domestic violence incident (§ 273.5, subd. (a)), but he was ultimately convicted in that case of obstructing or resisting a peace officer (§ 69).  According to the probation report, he was sentenced to six years in prison for that offense.[4]  In 2016, while the latter case was pending, he was arrested and convicted for possession of ammunition by a person prohibited from owning or possessing a firearm (i.e., a felon).  (§ 30305, subd. (a)(1).)  He was placed on probation, which was terminated after he was sentenced to prison on the conviction for obstructing or resisting a peace officer.

As set forth in more detail below, Soriano has had numerous other arrests, including an arrest a few weeks before the second day of the hearing on his motion for mental health diversion while he was out of custody on bail.  In opposing the motion, the prosecution submitted more than 200 pages of police

---

[4] His rap sheet from the California Law Enforcement Telecommunications System (CLETS), which was admitted into evidence at the preliminary hearing, indicates he was sentenced to seven years for that offense.

reports, some related to convictions and others related to alleged conduct that did not result in charges or convictions.  In denying mental health diversion, the trial court considered some of these reports, as explained below.

## C.    Motion for Mental Health Diversion
### 1.    *Moving papers*

On February 22, 2024, Soriano filed a motion for mental health diversion pursuant to section 1001.36.  He stated he was statutorily eligible and suitable for diversion, based primarily on the information contained in an attached report describing his February 2024 psychological evaluation by a clinical psychologist.

The psychologist stated Soriano had the following diagnoses: posttraumatic stress disorder (PTSD), methamphetamine use disorder, and alcohol use disorder.  (See § 1001.36, subd. (b)(1) [eligibility for mental health diversion requires that the defendant "has been diagnosed with a mental disorder," including PTSD].)  The PTSD diagnosis was documented in mental health records dating back to 2011 when Soriano was 19 years old.

During the evaluation, Soriano indicated his mental health issues stemmed from witnessing the shooting of his brother when he (Soriano) was 15 years old.  Soriano also reported a history of alcohol use since age 13 and methamphetamine use since age 18, as well as a history of mental health and substance abuse treatment beginning around age 15.  The psychologist concluded Soriano "medicat[ed] his PTSD symptoms with drugs and alcohol," and his "numerous" arrests and charges, including the current charges, "involve the use of drugs and alcohol."  (See § 1001.36, subd. (b)(2) [eligibility for mental health diversion

6

requires that the "defendant's mental disorder was a significant factor in the commission of the charged offense"].)  At the time of his psychological evaluation, which occurred after the preliminary hearing while he was still in custody, he was not taking any psychotropic medication.

Regarding suitability for pretrial mental health diversion, the psychologist opined that Soriano's "symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment."  (§ 1001.36, subd. (c)(1).)  The report references confirmation received from the Los Angeles Centers for Alcohol & Drug Abuse (L.A. CADA) that Soriano was amenable to treatment and met the criteria for participation in their residential treatment program.  Soriano attached a suitability letter from L.A. CADA to his motion.

The psychologist also reported that Soriano confirmed during the evaluation that he consented to diversion (§ 1001.36, subd. (c)(2)), and he agreed to comply with treatment as a condition of diversion (§ 1001.36, subd. (c)(3)).

The final statutory suitability criterion addressed in the report is the one at issue in this appeal:  "The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community."  (§ 1001.36, subd. (c)(4).)  Under section 1170.18, subdivision (c), " 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667," i.e., a "super strike" offense, including murder and attempted murder.  The psychologist's analysis of this criterion states in full, "Defendant's

7

rap sheet does not include a history of the above-mentioned charges [super strike offenses]."

Soriano also attached to the motion the police report from his arrest in the present matter, which states that officers recovered a firearm that was in his possession at the time of the arrest as well as four live rounds that were in his pocket. Bernal and the security guard identified Soriano in a photographic lineup as the person who fired multiple rounds from the firearm. Officers recovered from Bernal's father and booked into evidence a "live round and a laser [also referred to in the report as a gun light] that fell off the weapon during the fight." They also recovered from the crime scene and booked into evidence three spent casings.

The district attorney did not file an opposition to Soriano's motion for mental health diversion but opposed the motion at the hearing.

### 2.   *April 22, 2024 hearing*

The hearing on the motion commenced on April 22, 2024. The prosecutor urged the trial court to deny the motion, citing Soriano's "lengthy criminal history," including "a history of force and violence," dating back to 2006. The prosecutor provided a summary of Soriano's sustained petitions in juvenile delinquency proceedings, adult convictions, as well as other alleged criminal conduct that did not result in convictions.

Defense counsel, in arguing that Soriano did not pose an unreasonable risk of danger to public safety if treated in the community, noted that Soriano was released from custody on bail over a month before this hearing and had not committed "any new offenses." Counsel also argued that the circumstances of the charged offenses as well as his criminal history did not support a

8

finding that there was an unreasonable risk Soriano would commit a super strike offense.

Responding to the prosecutor's summary of Soriano's criminal history, defense counsel argued it was "not appropriate" for the court to consider "cases that have been dismissed," "cases that the People were not able to provide proof of," or "cases where there was an arrest only." Counsel also indicated she had not received copies of the police reports the prosecutor referenced throughout her summary of Soriano's criminal history. The trial court continued the hearing on the motion and ordered the prosecution to provide the reports to the defense. In advance of the continued hearing, the prosecution submitted to the court and provided to the defense more than 200 pages of Soriano's police reports.

### 3. *May 24, 2024 hearing*

The hearing on the motion resumed on May 24, 2024. Soriano was not present because he had checked himself into the L.A. CADA inpatient program the day before, notwithstanding the court's order that he appear at the hearing.

The trial court provided a summary of the police reports for the record, including, but not limited to, the following: An October 2010 police report related to Soriano's 2013 conviction for burglary states that Soriano and his brother unlawfully entered the home of Soriano's former girlfriend/mother of his child through a bedroom window. The report also states that the victim and her friend, who was present during the incident, reported that Soriano punched the victim and kicked her body while she was on the ground, among other things, and attempted to leave with the baby. Soriano and his brother walked out of the home and were detained by officers in the front yard. The victim

9

told officers that Soriano had previously threatened to "go to her house and beat her up" and kill her.[5]

The police report related to Soriano's 2016 conviction for possession of ammunition by a felon states that officers recovered from Soriano's residence two "green military ammunition cans" containing "hundreds of rounds of live assault weapon ammunition," a broken stock for an assault rifle, two "replica" assault rifles, and a " 'POLICE' patch that is commonly affixed to a tactical vest."[6]

Another police report indicates that on May 4, 2024, after the first day of the hearing on Soriano's motion for mental health diversion and before the second, officers responded to the home of Soriano's mother after a radio call regarding "a 'Violent Male with Mental Illness.' " Soriano's mother reported that Soriano became "irate" and "verbally aggressive toward[] her" after he was unable to start his car. A man came outside and told Soriano not to speak to his mother in that manner. Soriano punched the man multiple times and a scuffle ensued. Another man tried to break up the fist fight and Soriano punched that man in the face multiple times. Soriano fled when his mother said she was calling the police. She informed officers that she believed Soriano was under the influence of narcotics due to his aggressive

---

[5] A few months later, in January 2011, the same victim reported to police that Soriano physically assaulted her when he arrived at his mother's home and she was there.

[6] The record does not include a police report related to Soriano's 2016 conviction for resisting or obstructing a peace officer for which he was sentenced to either six or seven years in prison. As set forth above, Soriano was also charged in that case with domestic violence.

behavior. It is not clear from the record whether Soriano was arrested or charged for the alleged incident.[7]

After referencing the May 4, 2024 police report, the trial court noted for the record that earlier in the day a process server came to the courtroom attempting to serve Soriano with a restraining order protecting his mother from him. As noted above, Soriano was not present in court that day.

Defense counsel objected to the court's consideration of the police reports, arguing they were not admissible. The court stated it would not consider a series of reports from 2023 regarding armed robberies at a retail store, finding them to be unreliable after the parties informed the court that the charges against Soriano had been dismissed. The court also noted that some of the reports were "not relevant to violence."

Defense counsel asserted, "Even the most serious charges that [Soriano has] had have not been anything close to murder, attempt murder." Counsel acknowledged that "pointing a firearm at someone is obviously dangerous," but argued, "the fact that someone uses or misuses a firearm is not by itself evidence that they are at risk of committing a super strike offense." In support of this argument, counsel cited *People v. Whitmill* (2022) 86 Cal.App.5th 1138 (*Whitmill*), a case we discuss below in which the appellate court reversed an order denying mental health diversion.

---

[7] In August 2023, four months before Soriano's arrest in this case, his mother reported to police that he had physically assaulted her at her home causing bruising to her face, arm, and leg. It does not appear from the record that this alleged incident resulted in an arrest or charges.

11

The prosecutor argued that Soriano's criminal history, including the current charged offenses, demonstrated that he posed an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. The prosecutor further stated:

"The People would be willing to offer a [treatment] program. The People have offered programs in this case in the past. The question is whether diversion is the appropriate way to go in this case, pursuant to [section] 1001.36, and the People would suggest it is not.

"The defendant is beyond some sort of informal probation. The defendant needs more supervision. He just has a long history. He has a lot of violence in his background. He's been in possession of weapons, possession of ammunition. He shot a gun in the instant case. He's assaulted several people. He's assaulted his family members. His family members want a restraining order against him. And there needs to be orders put in place to protect the community when the defendant is out there.

"So the People are asking that -- not that he be denied a program or any ability to get rehabilitation, he's certainly going to be ordered that, if that's what he'd like, but pursuant to [section] 1001.36, specifically, that he be denied some sort of informal diversion program."

The trial court denied the diversion motion, finding Soriano "would pose an unreasonable risk of danger to public safety" in that he "would pose an unreasonable risk of committing a super strike." The court stated that it based its findings on the alleged facts in the current case and the police reports it considered (which excluded those it found to be unreliable, as noted above).

12

The court also indicated that it accepted and considered the information provided by defense counsel that some of the arrests and alleged criminal conduct did not result in charges or convictions. The court referenced *Whitmill*, the case cited by defense counsel, and explained that it found the case to be distinguishable, concluding Soriano "is a much more potentially dangerous individual than the defendant in *Whitmill*."

The court "put [the matter] over for a couple months to see how [Soriano was] doing in the [L.A. CADA] program" he had started the previous day.

**D.    No Contest Plea**

On July 29, 2024, Soriano was present in court, and he waived his constitutional rights, withdrew his not guilty plea, and pleaded no contest to assault with a semiautomatic firearm. Under the terms of the plea negotiation, the trial court imposed a middle term prison sentence of six years, suspended execution of the prison sentence, and placed Soriano on formal probation for two years. The terms and conditions of probation included that Soriano serve 148 days in jail (which he had already served), complete three months of inpatient and six months of outpatient treatment at L.A. CADA and stay away from Bernal and the taco stand. Soriano had already completed two months of his inpatient treatment. The court granted the prosecution's motion to dismiss the counts for discharge of a firearm with gross negligence and possession of a firearm by a felon under the terms of the plea deal.

Soriano filed a timely notice of appeal from the judgment, stating he was challenging the denial of the motion for mental

13

health diversion.  The trial court granted his request for a certificate of probable cause.

## DISCUSSION

Soriano contends the trial court abused its discretion in denying his motion for mental health diversion based on the finding he would pose an unreasonable risk of danger to public safety if treated in the community.  Because we conclude the court's finding is supported by substantial evidence, we reject Soriano's contention.

### A.     Legal Principles Regarding Diversion and Standard of Review

Diversion under section 1001.36 "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment." (*Sarmiento v. Superior Court of San Diego County* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*).)  One of the purposes of the legislation is "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety." (§ 1001.35, subd. (a).)

"[M]ental health diversion requires trial court findings that the defendant is both *eligible* for diversion and *suitable* for the program.  The criteria for each are specified in the statute. (§ 1001.36, subds. (b) & (c).)  Defendants are eligible if they have been diagnosed with a recognized mental disorder that was a significant factor in the commission of the criminal offense with which they are charged.  (*Id.*, subd. (b).)  They are suitable if: (1) in the opinion of a qualified mental health expert, the

14

defendant's mental disorder would respond to treatment; (2) the defendant agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an 'unreasonable risk of danger to public safety' as defined in sections 1170.18 and 667, subdivision (e)(2)(C)(iv). (§ 1001.36, subd. (c).)" (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 891.)

If "the defendant satisfies the eligibility requirements," and "the court determines that the defendant is suitable for [pretrial] diversion," the trial "court may, in its discretion, and after considering the positions of the defense and prosecution, grant pretrial diversion to [the] defendant." (§ 1001.36, subd. (a).) The court must exercise its discretion "consistent with express statutory requirements and the underlying purposes of mental health diversion . . . ." (*Sarmiento*, *supra*, 98 Cal.App.5th at pp. 895-896.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449 (*Moine*).)

This appeal concerns only the fourth suitability criterion listed above—no unreasonable risk of danger to public safety—as there is no dispute here that Soriano has shown he is eligible for mental health diversion and meets the first three suitability criteria. Unreasonable risk of danger to public safety means "a likelihood that if the defendant is granted diversion, [he or] she will commit one of the 'super strike' violent felonies enumerated in section 667, subdivision (e)(2)(C)(iv)." (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 895; *Moine*, *supra,* 62 Cal.App.5th at pp. 449-450.) "Those super strikes are murder, attempted murder,

15

solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, any serious or violent felony punishable by death or life imprisonment, or any sexually violent offenses or sexual offense committed against minors under the age of 14." (*Whitmill, supra,* 86 Cal.App.5th at p. 1150.)[8]

In deciding whether a defendant poses an unreasonable risk of danger to public safety, the "court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).) A trial court may "rely[] primarily, or even entirely, on the circumstances of the charged offense or offenses" in finding a defendant unsuitable for diversion. (*People v. Bunas* (2022) 79 Cal.App.5th 840, 862.) We review a trial court's finding that a defendant poses an unreasonable risk of danger to public safety for substantial evidence. (*Sarmiento, supra,* 98 Cal.App.5th at p. 897; *Whitmill, supra,* 86 Cal.App.5th at p. 1150.)

---

[8] "A defendant may not be placed into a diversion program" if his or her current charged offense is one of a number of super strike offenses specifically enumerated in the diversion statute. (§ 1001.36, subd. (d).) Soriano's charged offenses did not so disqualify him from the diversion program.

**B.    Substantial Evidence Supports the Trial Court's Finding That Soriano Posed an Unreasonable Risk of Danger to Public Safety If Granted Diversion**

Prior to being charged with the current offenses, Soriano had a history of illegally possessing firearms and ammunition and committing violent acts against others.  As a juvenile he had a sustained petition for minor in possession of a firearm.  At 19, he entered the home of his former girlfriend through a bedroom window and reportedly attempted to remove their baby from the home by force and violence, an incident which resulted in his 2013 burglary conviction and a two-year prison sentence.  Around three years after the burglary conviction, when Soriano was 24, he was charged with inflicting corporal injury during a domestic violence incident, but he was ultimately convicted in that case of obstructing or resisting a peace officer.  He was sentenced to six or seven years in prison for that offense (based on the probation report and rap sheet in the record, which list different prison terms).  While the charges in the latter case were pending, Soriano was arrested and convicted for possession of ammunition by a person prohibited from owning or possessing a firearm (i.e., a felon), after officers recovered from his residence hundreds of rounds of live assault weapon ammunition, among other things.

In the present case, without provocation, Soriano racked a semiautomatic firearm, pointed it at Bernal's chest, and then punched Bernal on the chin.  During the ensuing scuffle, Bernal's father approached Soriano from behind, tackled him to the ground, and disarmed him.  When it appeared that the situation had been de-escalated, Bernal's father told Soriano not to fire the gun and then returned it to him.  Notwithstanding the

17

admonishment, Soriano discharged three gunshots into the air as he walked away, yelling loudly and angrily.

On May 4, 2024, less than two weeks after defense counsel emphasized to the court that Soriano was suitable for mental health diversion as he had not committed any new offenses while out of custody on bail in this case, Soriano's mother and two others made a police report regarding Soriano's alleged violent conduct. They told officers that Soriano became irate and verbally aggressive with his mother after his car would not start, and he punched two other individuals multiple times each during the incident. He reportedly fled when his mother said she was calling the police. Three weeks later, on the second day of the hearing on the diversion motion (May 24, 2024), a process server came to court to serve Soriano with a restraining order protecting his mother from him.

The foregoing facts constitute substantial evidence supporting the trial court's finding there was a likelihood Soriano would commit a super strike offense if granted diversion. Had Bernal's father not tackled Soriano from behind, disarmed him, and de-escalated the situation, things might have ended very differently after Soriano pointed a loaded firearm at Bernal's chest and then physically assaulted him. The circumstances of the charged offenses, Soriano's history of illegally possessing firearms and ammunition, and reports that he continued to act violently, even while his motion for mental health diversion was pending, support the trial court's finding that he posed an unreasonable risk of danger to public safety if granted diversion.

In asserting he does not pose such a risk, Soriano and the psychologist who evaluated him rely on the fact that he has never been arrested for or charged with a super strike offense.

However, there is no requirement that a denial of a motion for mental health diversion be supported by a prior arrest, charge, or conviction for a super strike offense. The criterion at issue here concerns whether it is likely that the defendant will commit a super strike offense in the future if diversion is granted.

Soriano argues the trial court abused its discretion in "consider[ing] police reports of incidents that never produced a conviction."[9] The diversion statute provides that in deciding whether a defendant poses an unreasonable risk of danger to public safety, the "court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, *the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate*." (§ 1001.36, subd. (c)(4), italics added.) In this case, the police reports provided context regarding Soriano's criminal history and his history of violence, and the statute did not prohibit their consideration. The court declined to consider police reports it found unreliable, such as those related to incidents for which charges were filed but later dismissed. Furthermore, the court took into consideration that some reports related to incidents that did not result in charges or convictions. There was no abuse of discretion. In any event, even ignoring the police reports that Soriano believes should have been excluded, there is substantial evidence supporting the trial court's finding that Soriano posed

---

[9] Soriano did not object to the court's consideration of the police reports related to the current charged offenses—and in fact attached them to his diversion motion—although he had not been convicted of any of those offenses at the time the court heard the motion.

an unreasonable danger to public safety based on his prior convictions and the circumstances of the current charged offenses.

Soriano also argues that the denial of his motion for mental health diversion was arbitrary, as the trial court allowed him to remain out of custody and be treated in the community at L.A. CADA, both pre- and post-plea. In this appeal, we are not tasked with reviewing the court's decisions after its denial of the diversion motion. Reviewing what is before us, we conclude substantial evidence supports the court's finding of an unreasonable risk of danger to public safety, and the court did not abuse its discretion in denying the diversion motion.

Finally, Soriano's reliance on *Moine* and *Whitmill*, cases in which denials of mental health diversion were reversed, do not persuade us that reversal is required here. In *Moine*, *supra*, 62 Cal.App.5th 440, the defendant was charged with assault and battery arising from a fistfight in an urgent care waiting room, and two counts of criminal threats after he subsequently became upset in another medical provider's waiting room and said as he left that he could go home and get his gun and return and shoot everyone. (*Id*. at pp. 444-445.) Unlike Soriano, he did not use a weapon in the commission of the charged offenses, he did not have a prior history of violence or felony convictions, and he was out of custody on bail, without incident, for more than two years prior to the hearing on his diversion motion. (*Id*. at pp. 447, 450, 451.) Moreover, "two psychiatrists determined that [Moine] posed a low risk for future assault." (*Id*. at p. 451.) The psychologist who evaluated Soriano noted that he had never been charged with a super strike offense but provided no opinion on the risk of future violence.

20

In *Whitmill*, *supra*, 86 Cal.App.5th 1138, a 61-year-old defendant, who had PTSD from sexual violence he had experienced during his military service, was charged with possession of a firearm by a felon, discharge of a firearm with gross negligence, and criminal threats. (*Id.* at pp. 1142, 1143-1144.) Testimony at his preliminary hearing indicated that when his girlfriend's male friend walked toward him in an alley and asked if he was " 'okay,' " he "replied, 'Don't walk up on me' and fired a shot in the air." (*Id.* at p. 1142.) Then he ran away. A deputy testified that the defendant's girlfriend reported that during the incident the defendant told her, " 'Bitch, I will kill you.' " (*Id.* at p. 1143.) However, the girlfriend testified that the defendant did not threaten her; rather another man "walked up to her after the incident and said, 'Bitch, is he going to kill you?' " (*Ibid.*) Unlike Soriano, the defendant in *Whitmill* did not point the firearm at anyone or physically assault anyone, and his criminal history involved no violence. (*Id.* at p. 1151.)

Soriano has not demonstrated error. Accordingly, we affirm the judgment.

### DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.                    BENDIX, J.

21